IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROBERT G. GINTER, | ) | 8:05CV148 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| CITY OF ASHLAND, a political | ) | |
| subdivision of the State of Nebraska, | ) | |
| and RONNA WIIG, individually and | ) | |
| as Mayor of the City of Ashland, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the defendants' motion to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6). (Filing 8.) The plaintiff has not filed a response. The motion will be granted in part and denied in part.

## *I. Background*

The plaintiff, Robert Ginter, was employed as a police officer in Ashland, Nebraska, from July 2001 until April 6, 2003, when he was terminated. Ginter alleges that the defendant Ronna Wiig, who apparently took office as Mayor of the City of Ashland in early 2003, had promised during the election campaign to get rid of Ginter and the chief of police.

Ginter alleges that, upon taking office, "Wiig began disseminating false and defamatory information to persons in the City of Ashland outlining, inter alia, past disciplinary measures against Plaintiff Ginter which, in fact, had never been taken." (Complaint (filing 1), ¶ 14.) Ginter also alleges that "Wiig actively solicited and coerced complaints from residents of the City of Ashland concerning Plaintiff Ginter and his conduct . . . and knowingly published such false complaint[s]," and that "Wiig

has republished false statements of other persons in an attempt to damage Plaintiff's employment . . . as well has his career as a police officer." (Complaint, ¶¶ 16, 17.)

Ginter claims that his First Amendment rights were violated and, in support of this claim, makes two allegations. First, Ginter alleges that Wiig ordered him and other Ashland police officers "to not discuss the false and defamatory statements" and warned that "Ginter's failure to abide such order would result in his dismissal from employment . . .." (Complaint, ¶ 15.) Second, Ginter alleges that "Wiig has forbidden, under threat of dismissal, certain officials of the government of Defendant City of Ashland from associating with Plaintiff Ginter." (Complaint, ¶ 18.)

Ginter also presents a retaliation claim, alleging that he was placed on suspension on March 20, 2003, three days after he filed a federal lawsuit "in an attempt to stop the harassment he was experiencing from Defendant Wiig." (Complaint, ¶¶ 21-23.) In this regard, I take judicial notice that an action involving the same parties was filed in this court on March 17, 2003, docketed as Case No. 8:03cv104, and was voluntarily dismissed by Ginter on July 31, 2003.[1]

Ginter alleges that the present action is brought under "42 U.S.C. § 2000(e) et seq. and 42 U.S.C. § 1983, 29 U.S.C. § 201 et seq. and . . . under Nebraska Revised Statutes. (Complaint ¶ 7.) His complaint is divided into three "causes of action," which are vague and confusing. In the first cause of action, "Unequal Treatment Due to Retaliation," Ginter alleges that the City of Ashland committed an unlawful employment practice by "disciplining him in retaliation for his complaints of discrimination." (Complaint, ¶ 26.) Because no other pertinent facts are alleged, I construe this claim to involve the suspension that was imposed after the filing of the prior lawsuit. Although the relief requested in connection with the first cause of action includes reinstatement, Ginter has not alleged that his firing was retaliatory,

---

[1] The prior action included two claims: (1) a § 1983 claim that is identical to the "third cause of action" in the present lawsuit; and (2) a claim for libel and slander.

only that he "was terminated for reasons which were false." (Complaint, ¶ 24.) For his second cause of action, "42 U.S.C. § 1983 – Deprivation of Federal Rights," Ginter alleges, without elaboration, that the defendants "violated Plaintiff's Constitutional and Federal Statutory rights and privileges, and as such are a [sic] direct violation of 42 U.S.C. § 1983." (Complaint, ¶ 32.) Finally, for his third cause of action, "Deprivation of Constitutional Rights," Ginter alleges that the defendants "violated and wholly disregarded Plaintiff Ginter's rights secured him by the United States and Nebraska Constitutions," and, in particular,

> deprived Plaintiff Ginter of the following federally protected, Constitutional rights, privileges and immunities:
>
> - Plaintiff's right to freedom of speech guaranteed to him by the First and Fourteenth Amendments to the Federal Constitution;
>
> - Plaintiff's right to freedom of association guaranteed to him by the First and Fourteenth Amendments to the Federal Constitution;
>
> - Plaintiff's right to substantive and procedural due process guaranteed him by the Fourteenth Amendment to the Federal Constitution.

(Complaint, ¶¶ 36, 38.) If there is a meaningful distinction between the second and third causes of action, I am unable to discern it. It appears to me that both causes of action are brought under § 1983 for the same alleged constitutional violations. The first cause of action appears to me to be a Title VII claim.

## *II. Discussion*

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), allegations in the complaint must be viewed in the light most favorable to the Plaintiff. <u>Fusco v. Xerox Corp.</u>, 676 F.2d 332, 334 (8th Cir. 1982). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

3

Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted). "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a Plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Jackson Sawmill Co. v. United States, 580 F.2d 302, 306 (8th Cir. 1978).

### *A. Due Process Claims*

"A due process claim 'is cognizable only if there is a recognized liberty or property interest at stake.' Johnson v. City of Minneapolis, 152 F.3d 859, 861 (8th Cir.1998)." Carpenter Outdoor Advertising Co. v. City of Fenton, 251 F.3d 686, 689 (8th Cir. 2001) (affirming Rule 12(b)(6) dismissal of procedural and substantive due process claims). See also Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001) (analysis of either the procedural or the substantive component of the due process clause must begin with an examination of the interest allegedly violated).

"'An employee's liberty interest is implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges.' Shands v. City of Kennett, 993 F.2d 1337, 1347 (8th Cir.1993). "The stigma must be significant, and it usually involves allegations of dishonesty, immorality, racism, or a similar character-demeaning charge." Howard v. Columbia Public School Dist., 363 F.3d 797, 802 (8th Cir. 2004); Winegar v. Des Moines Indep. Cmty. Sch. Dist., 20 F.3d 895, 899 (8th Cir.1994). In addition to demonstrating that the proffered reasons for discharge were stigmatizing, an employee asserting violation of a liberty interest must further show that his employer made those reasons public." Allen v. City of Pocahontas, 340 F.3d 551, 556 (8th Cir. 2003); Payne v. Ballard, 761 F.2d 491, 493 (8th Cir.1985). In such a case, the employee is entitled to an opportunity to clear his name. See Putnam v. Keller, 332 F.3d 541, 546 (8th Cir. 2003); Coleman v. Reed, 147 F.3d 751, 755 (8th Cir.1998).

4

Ginter alleges that he was terminated for false reasons, and that Mayor Wiig published false and defamatory information that was intended to damage his career as a police officer. Liberally construed, his complaint states a § 1983 procedural due process claim.

"To state a substantive due process claim, [Ginter] must [additionally] allege that a government action was 'sufficiently outrageous' or 'truly irrational, that is, something more than . . . arbitrary, capricious, or in violation of state law.'" Young v. City of St. Charles, 244 F.3d 623, 628 (8th Cir. 2001), quoting Anderson v. Douglas County, 4 F.3d 574, 577 (8th Cir. 1993). Ginter's complaint fails in this respect.

"It is by now a well-established principle that a public employee who has some legally cognizable property interest in continued employment is guaranteed a certain amount of procedural protection by the United States Constitution before being permanently deprived of that interest. This property interest in employment sufficient to trigger the application of procedural due process guarantees must be found by reference to state law." Serafin v. City of Lexington, 547 F.Supp. 1118, 1122-23 (D.Neb. 1982), aff'd, 716 F.2d 909 (8th Cir. 1983) (citations omitted). "Under the law of Nebraska, an employee is generally terminable at will in the absence of an employment contract for a fixed term. The Nebraska Supreme Court has recognized, however, that persons may have constitutionally protected property rights in continued public employment stemming from such sources as municipal ordinances, implied contracts and the regulations of administrative agencies." Ritchie v. Walker Mfg. Co., 963 F.2d 1119, 1123 (8th Cir. 1992) (citations omitted).

Ginter has failed to allege any facts showing that he had a "legitimate claim of entitlement" to working as police officer for the City of Ashland. See Thompson v. Adams, 268 F.3d 609, 611 (8th Cir. 2001) (citing Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). In other words, no protected property interest is shown to exist.

5

### *B. First Amendment Claims*

A public employee alleging a violation of the right to free speech must show that the speech in question is entitled to the protections of the First Amendment. The speech must address a matter of public concern. See Buazard v. Meridith, 172 F.3d 546, 548 (8th Cir. 1999). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context" of the speech, and that speech must relate to some "matter of political, social or other concern to the community." Id. (quoting Connick v. Myers, 461 U.S. 138, 146-47 (1983)).

When a public employee's speech is purely job-related, that speech will not be deemed a matter of public concern. Id. Unless the employee is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment. Id. However, a public employee does not necessarily give up his right to free speech, and the protection of the First Amendment, simply because his speech is private, and not expressed to the public. See id., at 549 (citing Givhan v. Western Consolidated School Dist., 439 U.S. 410, 414 (1979)).

Whether the employee's speech is about a matter of public concern presents a question of law for the court to decide. See de Llano v. Berglund, 282 F.3d 1031, 1036 (8th Cir. 2002) (citing Connick v. Myers, 461 U.S. 138, 148 (1983)). Matters of public concern include matters of political, social, and other concern to the community. Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000) (citing Connick, 416 U.S. at 147-48).

Nothing in Ginter's complaint suggests that he was forbidden from speaking on matters of public concern. It only appears that he was only prevented from speaking to fellow officers about the accusations that had been made against him. This is not an actionable First Amendment free speech claim.

There is no doubt that "the freedom of an individual to associate for the purpose of advancing beliefs and ideas is protected by the First and Fourteenth Amendments." Hanten v. School Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999) (quoting Abood v. Detroit Board of Education, 431 U.S. 209, 233 (1977)). Expressive purposes protected by the first amendment include "a wide variety of political, social, economic, educational, religious and cultural ends." See Vieira v. Presley, 988 F.2d 850, 852 (8th Cir. 1993) (quoting Roberts v. United States Jaycees, 468 U.S. 622-23 (1984)). Certain intimate relationships which are close to a fundamental element of personal liberty should also be protected from state interference. Id. Ginter's bare allegation that some unidentified city officials were ordered not to associate with him does not establish a First Amendment violation.

### C. Retaliation Claims

"To state a retaliation claim, consisting of the same elements under Title VII and the First Amendment, a plaintiff must prove that: (1) she engaged in a protected activity; (2) that the employer took an adverse employment action against her, and (3) that the two situations are causally connected." Okruhlik v. University of Arkansas, 395 F.3d 872, 878 (8th Cir. 2005). Ginter has alleged that he was suspended for filing a lawsuit against the City of Ashland and Mayor Miig in which he claimed that his constitutional rights were being violated and that he was being defamed. He allegedly filed the suit "in an attempt to stop the harassment." (Complaint, ¶ 21.)

The filing of a formal grievance or lawsuit is not protected activity unless it touches upon a matter of public concern. See Hoffmann v. Mayor, Councilmen & Citizens of Liberty, 905 F.2d 229, 233-34 (8th Cir. 1990). See also Kirby v. City Of Elizabeth City, 388 F.3d 440, 448 (4th Cir. 2004) (collecting cases and stating that the majority of circuits hold that a public employee's petition, like his speech, is constitutionally protected only when it addresses a matter of public concern), petition for cert. filed, 73 U.S.L.W. (Jan. 26, 2005) (No. 04-1025). Ginter's prior lawsuit, like the present action, involved purely personal matters.

7

### *D. Mayor Miig's Qualified Immunity Claims*

"Qualified immunity protects government officials from damage liability unless their discretionary acts violated clearly established statutory or constitutional rights. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity guards against the injustice of subjecting public officials to damage liability for the good faith performance of discretionary duties they are legally obligated to undertake, and the danger that the threat of such liability will deter officials from performing with the decisiveness and judgment the public good requires. See Scheuer v. Rhodes, 416 U.S. 232, 241-42, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Qualified immunity protects all but the plainly incompetent and those who willingly violate the law. See Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)." King v. Beavers, 148 F.3d 1031, 1034 (8th Cir. 1998).

The standard for addressing qualified immunity at the Rule 12(b)(6) stage is whether immunity is established on the face of the complaint. Schatz Family ex rel. Schatz v. Gierer, 346 F.3d 1157, 1159 (8th Cir. 2003). The defendant is entitled to qualified immunity unless the plaintiff has alleged the violation of a constitutional right that was clearly established at the time of the alleged violation. Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996). A right is "clearly established" when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. Whisman Through Whisman v. Rinehart, 119 F.3d 1303, 1309 (8th Cir. 1997). In this regard, a flexible standard applies in this circuit, requiring some, but not precise factual correspondence with precedent, and demanding that officials apply general, well-developed legal principles. See id.[2]

---

[2] Qualified immunity is usually raised by a motion for summary judgment after a limited amount of discovery has been conducted to determine whether defendants acted objectively in a reasonable manner and whether a plaintiff's rights were clearly established at the time of the alleged deprivation. Whisman, 119 F.3d at 1309 (citing Murphy v. Morris, 849 F.2d 1101, 1103 (8th Cir. 1988)). The standard is to be applied to a particular defendant's conduct as a question of law and is to be decided

Ginter's only actionable claim is a procedural due process claim that concerns Mayor Miig's alleged publication of false statements. That a public employee enjoys a protected liberty interest in his "good name, reputation, honor, or integrity" was well-established at the time. See Mascho v. Gee, 24 F.3d 1037, 1039 (8th Cir.1994), citing Board of Regents v. Roth, 408 U.S. 564, 573 (1972). It follows that Mayor Miig is not entitled to qualified immunity with respect to this § 1983 claim.

### *III. Conclusion*

The defendant's motion to dismiss will be granted except to the extent that the complaint alleges a § 1983 procedural due process liberty interest claim.

Accordingly,

IT IS ORDERED that, pursuant to Fed. R. Civ. P. 12(b)(6) the defendants' motion to dismiss (filing 8) is granted in part and denied in part, as follows:

a. The motion is denied insofar as the plaintiff alleges that his termination involved a procedural due process liberty interest violation; and

b. In all other respects, the motion is granted.

September 26, 2005.   BY THE COURT:

   s/ *Richard G. Kopf*
   United States District Judge

---

by the court prior to trial. Id. (citing Swenson v. Trickey, 995 F.2d 132, 133 (8th Cir. 1993)).

9